**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ALESHIA TERRY,

  Plaintiff,

v.                                                               CASE NO.:

LAFAYETTE STATE BANK,

  Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, ALESHIA TERRY, by and through the undersigned counsel, and sues Defendant, LAFAYETTE STATE BANK, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. The alleged violations described herein occurred in Suwannee County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391, as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

8. Plaintiff is a natural person, and citizen of the State of Florida, residing in Suwannee County.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant is a corporation with its principal place of business located at 340 W Main Street, Mayo, Florida 32066 and which conducts business through its registered agent, Robert T Ernest, located at 340 W Main Street, Mayo, Florida 32066.

## FACTUAL ALLEGATIONS

11. Plaintiff was hired by Defendant in or around June of 1998 and was given the following positions throughout her employment: Bank Teller, Customer Service Representative, Branch Manager, Loan Officer, Assistant Vice President and Security Officer.

12. As part of her employment, Plaintiff's personal cellular telephone number (386) ***-3135 was provided to Defendant. The (386) ***-3135 number was placed into Defendant's automated maintenance notification system, "FIS". Plaintiff was never compensated for the use of her cellular telephone with the company.

13. Customers of LAFAYETTE STATE BANK can call into the FIS system if experiencing issues with the ATM machines. When the customers call in, Plaintiff is called and texted at (386) ***-3135 to assist.

14. Plaintiff's final day of employment with Lafayette Bank was on or around November 13, 2017. Plaintiff gathered her belongings from the office on or around November 27, 2017.

15. Despite Plaintiff leaving the company, Defendant left Plaintiff's telephone number in its automated maintenance notification system. This resulted in Plaintiff continuing to receive automated maintenance telephone calls to her cellular telephone despite no longer being employed by Defendant.

16. Shortly after, Plaintiff contacted the CEO and CFO, on or around May 16, 2018, regarding the continued phone calls from FIS. They stated they would take care of it.

17. Despite this request made my Plaintiff, Plaintiff continued to receive maintenance calls from Defendant's FIS system.

18. Plaintiff then decided, on or around June 29, 2018, to contact Board Members about deleting her number and was again told it would be taken care of.

19. Despite this request made my Plaintiff, Plaintiff continued to receive maintenance calls from Defendant's FIS system.

20. On or around April 23, 2020, Plaintiff for the third time tried to stop the calls. She called into FIS to tell them to stop calling as the CEO and CFO ignored her request. When she did, she was informed that someone from LAFAYETTE STATE BANK needed to contact FIS to approve the removal of her number from the list.

21. Defendant placed approximately forty-five (45) calls a day to Plaintiff's cellular telephone number after Plaintiff clearly and unequivocally revoked consent in which Defendant believed it had to contact her on her cellular telephone number.

22. Each of these daily estimated forty-five (45) calls were automatic which utilized a pre-recorded message.

23. Each of the calls Defendant made to Plaintiff's cellular telephone number were made using an automatic telephone dialing system ("FIS") which dialed Plaintiff's number from a given set of phone numbers with no human intervention involved at the time of dialing. This system is an Automatic Telephone Dialing System as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1) and the Federal Communications Commission's (FCC's) 2003 Order regarding the TCPA. See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14092 (2003); Maddox v. CBE Group, No.: 1:17-cv-1909-SCJ, 2018 WL 2327037 (N.D. Ga. May 22, 2018).

24. Additionally, each of the calls Defendant made to Plaintiff's cellular telephone number utilized a pre-recorded message as regulated by the Telephone Consumer Protection Act.

25. Plaintiff will testify that each of the calls in question contained a pre-recorded audio message, not a live person. Plaintiff will further testify that on several occasions she received repeated automated calls whereby the exact same pre-recorded message was transmitted to her at different times.

26. For example, if Plaintiff did not interact with Defendant's automated system to "respond" to the call, then FIS would automatically re-dial Plaintiff's cellular telephone number in minute intervals and re-play her the same pre-recorded message she had previously been played asking for a passcode to respond to the work order.

27. At times, Plaintiff would interact with the FIS system after the call, and would enter a "passcode" in an effort to get the calls to stop. Otherwise, Defendant's FIS system would continue to automatically dial Plaintiff's number in minute intervals and re-play her the same pre-recorded message.

28. A live person was not available during any of the calls Defendant's system automatically made to Plaintiff's cellular telephone. Rather, a pre-recorded message was transmitted to Plaintiff instead. Such pre-recorded message played to Plaintiff's voice mail and Plaintiff heard the pre-recorded messages.

29. Furthermore, no person ever dialed the Plaintiff's cellular telephone number. Rather, FIS automatically dialed Plaintiff's cell number each time.

30. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (386) ***-3135, and were the called party and recipient of Defendant's calls.

31. Despite knowing that Plaintiff was no longer employed with Defendant, and being advised by Plaintiff three times that she wanted the calls to stop, Defendant failed to remove Plaintiff's number from its automatic telephone dialing system and allowed FIS to place over forty-five (45) additional calls daily to Plaintiff without her consent.

32. Defendant's telephone calls placed to Plaintiff's cell phone were not for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

33. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff. Defendant was aware of Plaintiff's requests to remove her number from the automated system but continued to allow the pre-recorded messages to be delivered to Plaintiff's cell phone.

34. Defendant knew Plaintiff no longer was employed at LAFAYETTE STATE BANK yet continued to call her regarding ATM maintenance requests. Furthermore, Plaintiff told the CEO, CFO, Board Members, and FIS that she no longer wished to receive these calls. However, Defendant chose to ignore Plaintiff's request and continued to allow Plaintiff to receive unwanted automated calls that included prerecorded messages to her cellular telephone.

35. From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

36. From each and every call without express consent placed by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular telephone by unwelcome calls, making the cellular telephone unavailable for legitimate callers or outgoing calls while the cellular telephone was ringing from Defendant's call.

37. From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary. Even for unanswered calls, Plaintiff had to waste time to unlock her cellular telephone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

38. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the cellular telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

39. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

40. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone where a pre-recorded voice message was left which occupied space in Plaintiff's cellular telephone or network.

41. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular telephone and his cellular telephone services.

42. As a result of the calls described above, Plaintiff suffered an invasion of privacy.

43. Plaintiff was further affected in a personal and individualized way by the stress, annoyance, and aggravation associated with the unwanted automated telephone calls she was receiving.

44. Each time Plaintiff received an unwanted call from Defendant she was reminded of the fact that she felt she need to leave her employment, which made Plaintiff irritably upset.

## COUNT I
### (Violation of the TCPA)

45. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty-four (44) as if fully set forth herein.

46. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff wished for the calls to stop.

47. Defendant violated the TCPA with respect to Plaintiff each time it placed an automated call utilizing a pre-recorded message without Plaintiff's consent.

48. Defendant willfully and knowingly violated the TCPA with respect to Plaintiff for each of the automated calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that she wanted Defendant to stop calling her about a position she no longer held.

49. There was no legitimate purpose for Defendant to call Plaintiff after her employment with Defendant concluded.

50. Each call Defendant made to Plaintiff utilized a previously recorded message.

51. Each call Defendant made to Plaintiff was made from an automatic telephone dialing system, FIS, which automatically dials numbers from a preset list of phone numbers with no human intervention involved at the time of dialing.

52. No live person was involved in any of the calls Defendant placed to Plaintiff's phone.

53. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against, LAFAYETTE STATE BANK, for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Octavio "Tav" Gomez*
Octavio Gomez, Esquire
Florida Bar No.: 0338620
Morgan & Morgan Tampa, P.A.
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Primary Email: TGomez@ForThePeople.com
Secondary Email: DGagliano@ForThePeople.com
*Attorney for Plaintiff*